Nathan Bull (to apply *pro hac vice*)
nbull@mwe.com
**MCDERMOTT WILL & EMERY LLP**
333 SE 2nd Avenue, Suite 4500
Miami, FL 33131
Tele: +1 212 547 5768
Fax: +1 305 347 6500

Daniel-Charles Wolf (to apply *pro hac vice*)
dcwolf@mwe.com
**MCDERMOTT WILL & EMERY LLP**
444 West Lake Street, Suite 4000
Chicago, IL 60606-0029
Tele: +1 312 372 2000
Fax: +1 312 984 7700

Preny Sarkissian (SBN 346776)
psarkissian@mwe.com
**MCDERMOTT WILL & EMERY LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA  90067-3206
Tele: +1 310 551 9335
Fax: +1 310 277 4730

Attorneys for Plaintiff
PRITESH PATEL

**UNITED STATED DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PRITESH PATEL,<br><br>               Plaintiff,<br><br>   vs.<br><br>BLOCKSTART VENTURES MGMT LLC,<br>RAMAN BINDLISH, and NICHOLAS M.<br>MAVRIS,<br><br>               Defendants. | CASE NO.<br><br><br>**COMPLAINT** |

Plaintiff Pritesh Patel ("Patel") for his complaint against Defendants Blockstart Ventures Mgmt LLC ("Blockstart"), Raman Bindlish ("Bindlish"), and Nicholas "Niko" M. Mavris ("Mavris") (collectively, the "Defendants") alleges, on knowledge as to his own actions and information and belief as to all other matters, as follows:

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

**INTRODUCTION**

1.      This action arises from a scheme by Raman Bindlish and Nicholas "Niko" Mavris, the managers of a cryptocurrency-focused venture fund called Blockstart Ventures LP (the "Fund" or the "Partnership"), to fraudulently induce an investor into a $5 million investment to facilitate their unlawful cryptocurrency speculation.

2.      Bindlish persuaded Patel to make his investment in February 2021 on the basis of representations that the Fund would make venture capital investments in early-stage companies focused on blockchain and cryptocurrency applications, assets, and related activities.  According to Bindlish, he was well-situated to execute that strategy using his purported background and connections in the early-stage cryptocurrency space.

3.      Unfortunately, Bindlish never intended to honor his representations.  After taking Patel's money, Defendants did not follow a venture capital investment strategy.  Instead, Defendants used Patel's funds to engage in rampant cryptocurrency trading and speculation, including investments in various ill-fated cryptocurrency tokens and exchanges, some of which are now in bankruptcy.  As a result of Defendants' willful misconduct, they have squandered millions of dollars of Patel's investment through unlawful trading.

4.      Defendants never provided any notice or explanation for their deviation from the Fund's investment strategy.  For good reason – Patel would have never entrusted Defendants with his money for pure cryptocurrency speculation.

5.      Rather, as part of their deceptive scheme, Defendants attempted to cover their tracks by refusing to perform annual audits required by the Fund's limited partnership agreement and California law.  Despite Patel's repeated requests for an audit, Defendants refused and claimed it was too expensive.  Worse, Defendants attempted to trick Patel into signing an audit waiver by secretly inserting a signature page into a package of documents for an unrelated investor consent.

6.      As a result of Defendants' failure to abide by their stated investment strategy or audit requirements, Blockstart has been operating unlawfully as an unregistered investment advisor and in violation of federal and California law (including the Investment Advisors Act of 1940 (the "Advisers Act") and the California Code of Regulations).

7.     Alarmed by Defendants' misconduct, Patel requested a full withdrawal of his investment. Although the vast majority of Patel's remaining investment has been deployed into highly liquid cryptocurrencies like Bitcoin and Ethereum, Defendants baselessly rejected Patel's withdrawal request, claiming they can hold Patel's funds hostage for a 60-month lockup period.

8.     There is no good-faith reason for Defendants to maintain their grip on Patel's investment, and it is clear they are doing so solely to keep the spigot flowing for their unlawful cryptocurrency speculation.

9.     Further, Defendants retaliated against Patel, including by revoking his access to the little information he had concerning the Fund's investments, and by continuing to refuse to provide him with even basic details regarding his investment and the Fund's holdings or performance.

10.    Accordingly, Patel brings this suit to hold Defendants accountable for their misconduct, including damages for the millions of dollars wasted by Defendants or, in the alternative, rescission of the Fund's limited partnership agreement and return of his investment.

## I.     PARTIES

11.    Plaintiff Pritesh Patel is a citizen of the state of Texas.

12.    Defendant Blockstart Ventures Mgmt LLC is a Delaware LLC with its principal place of business in Los Gatos, California. Blockstart is the general partner of non-party Blockstart Ventures LP (the "Fund"), a Delaware limited partnership.

13.    Defendant Raman Bindlish is a citizen of the state of California. Bindlish is the founder, manager, and owner of Blockstart.

14.    Defendant Nicholas M. Mavris is a citizen of California. Mavris is the general counsel, manager, and part-owner of Blockstart.

## II.     JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332 based upon diversity of citizenship and the amount in controversy exceeding the sum specified by 28 U.S.C. § 1332, exclusive of interest and costs.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

16. The Court has personal jurisdiction over Defendants under Cal. Code Civ. P. § 4.10 because Bindlish and Mavris are residents of California and Blockstart's principal place of business is in California.

17. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because all Defendants reside and are located in Santa Clara County or Del Norte County, California, which are in the Northern District of California.

18. Assignment to the San Jose Division is proper under Civil Local Rules 3-2(c) and (e) because Blockstart has its principal place of business in Los Gatos, California and a substantial part of the events or omissions that give rise to the claims occurred therein. Further, on information and belief, Bindlish resides in Santa Clara County.

## III. FACTUAL ALLEGATIONS

**A. Patel is introduced to Bindlish and Blockstart.**

19. Blockstart purports to be a venture capital firm that invests in early-stage companies focused on blockchain and cryptocurrency applications, assets, and related activities.

20. Patel first considered an investment with Blockstart in or around early 2021 while exploring opportunities to make venture capital investments in companies involved in the cryptocurrency and digital asset industry.

21. Patel was interested in Blockstart due to Bindlish's background in the startup space, including his purportedly strong contacts and relationships with early-stage companies. Bindlish's Linkedin profile touts his "more than 10 years of experience in angel investments and private equity as a technology mentor for Web2 and Web3 companies." Notably, his Linkedin profile does not mention any experience in cryptocurrency trading.

22. Following their introduction by a mutual colleague, Bindlish and Mavris had several conversations and sent materials to Patel in which they emphasized Bindlish's involvement in cryptocurrency projects and communities.

23. In these communications, Bindlish made clear that the Fund would focus on equity investments in early-stage cryptocurrency companies, and highlighted the venture capital investments made by the Fund to date.

24. Defendants represented to Patel that, while they prospected for suitable venture capital investments, the Fund may hold highly liquid cryptocurrency assets as a form of "treasury," including Bitcoin and Ethereum. Defendants also represented that they would make other investments on a limited basis to gain knowledge on projects and emerging applications that could lead to the identification of potential equity investments.

25. At no point in these conversations did Bindlish state that cryptocurrency speculation would be the Fund's primary focus.

**B.  Defendants misrepresent the Fund's investment strategy to induce Patel's investment.**

26. In early 2021, Bindlish solicited Patel's investment in the Fund by providing him a copy of the Fund's Amended and Restated Limited Partnership Agreement, dated January 17, 2020 (the "LPA"), a Private Placement Memorandum (the "PPM"), and a subscription agreement and related documents.

27. These documents unequivocally stated that Blockstart's investment strategy was to make venture capital investments.

28. For example, Section 2.4 of the LPA provides:



29. Likewise, the PPM, which was provided "," repeatedly states that Blockstart's strategy is to make venture capital investments in cryptocurrency companies, and not to trade in cryptocurrency itself. For example, it states:

a. 

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

[blacked out]¹

b. [blacked out]

[blacked out]

[blacked out]²

c. [blacked out]

[blacked out]

[blacked out]³

d. [blacked out]

[blacked out]⁴

30.     In the five pages that the PPM devotes to Blockstart's investment strategies, there is no mention of any intent to engage in cryptocurrency speculation.  To the contrary, the PPM expressly disclaims such an investment focus:



31.     The PPM also makes clear that investments in cryptocurrencies that may occur [blacked out] [blacked out]⁶ This disclosure aligns with Defendants' comments to Patel that investments in tokens would be made for the purpose to better understand the issuers for potential equity investments.

32.     Defendants also sent Patel marketing materials in early 2021 that reinforced their

---

¹ PPM at preamble.
² PPM at 3.
³ PPM at 20–21.
⁴ PPM at 21.
⁵ PPM at 23 (emphasis added).
⁶ PPM at 23–24 (emphasis added).

representations that Blockstart's strategy was not to act as traders in the "Digital Gold Rush," but rather as investors in companies that support blockchain and cryptocurrency infrastructure:

> "[I]nvestors are seeking rapid riches from Bitcoin, Blockchain, and the 'Digital Gold Rush' of 2021 and beyond[.] Those who amassed the greatest fortunes in the Gold Rush, however, were neither miners nor traders of the alluring, yellow metal. Instead, the visionaries of the era supplied miners with much needed supplies: Picks and shovels, pans, durable clothing, dry goods, etc. This simple but enduring approach is the foundational layer of BV's [Blockstart Ventures'] multi-strategy approach: Identify, evaluate, and invest in the blockchain industry's 'picks and shovels[.']"

33.     Defendants repeatedly represented in clear, unequivocal terms that the Fund's purpose was to invest in companies that focus on cryptocurrency and other digital assets and not to speculate directly in cryptocurrency.

34.     Patel was not interested in investing money with a manager and firm to engage in cryptocurrency trading that had no trading expertise or experience.  Instead, he invested with Defendants because of their strategy and purported experience in the venture capital space.

35.     Indeed, Patel has invested with another fund for purposes of cryptocurrency trading on the basis of demonstrated expertise and success.  He did not and would not choose Bindlish and Blockstart for such a strategy.

36.     Unfortunately, Defendants' representations were false and misleading and part of an orchestrated scheme intended to fraudulently induce Patel to invest in Blockstart and provide Defendants with millions of dollars to pursue cryptocurrency speculation.

**C.     Defendants misrepresent the Fund's trading strategy regarding futures.**

37.     Defendants also made misrepresentations regarding Blockstart's intentions to engage in risky futures trades.

38.     Defendants made clear in the PPM that they would not engage in futures trading, representing in the PPM that ███████████████████████ ████████████████████████████████████████████████[7]

39.     As Patel would later learn, however, Defendants intended to, and in fact did, use his investment to engage in risky futures trading, incurring substantial losses.

---

[7] PPM at 16.

**D.      In reliance on Defendants' representations, Patel invests nearly $5 million in the Fund.**

40.      Based on the Defendants' representations regarding the Fund's investment strategies, on or about February 19, 2021, Patel executed the LPA and invested 2,547 ETH in the Fund, worth $4.99 million USD ($4,990,000) at the closing exchange rate of $1,960.16 USD/ETH.[8]

41.      Patel instantly became the Fund's largest investor by far, with his ownership stake constituting about an 80% interest.

**E.      Defendants immediately misappropriate value from Patel.**

42.      Unbeknownst to Patel, Defendants valued his investment at an incorrect and arbitrary exchange rate of $1,896 USD/ETH, which devalued his investment by approximately $160,000.

43.      As a result of Defendants' misconduct, they secretly misappropriated approximately $160,000 from Patel at the outset of his investment.

44.      Patel confronted Bindlish with this error shortly after investing.  Bindlish stated that the exchange rate he used to value Patel's investment was lower than expected because fluctuations in the exchange rate had prevented the Fund from realizing the full spot price of ETH at the moment of investment.

45.      On the basis of this representation, Patel believed Bindlish had a reasonable good faith basis for the valuation.

46.      It was only in August 2022 that Patel learned that Bindlish had in fact sold the ETH used by Patel for his investment at an exchange rate that was significantly higher than Defendants used to value the investment.

**F.      Defendants used Patel's funds to engage in speculative cryptocurrency trading.**

47.      After securing Patel's investment, Defendants did not pursue a venture capital investment strategy.   Indeed, in the nearly three years since Patel became a limited partner, Defendants used Patel's $5 million investment to make just two investments that can be characterized as venture capital investments, for a total amount of $830,000.   According to the Fund's own

---

[8] *See Ethereum Historical Data*, COINMARKETCAP (last visited February 7, 2024), https://coinmarketcap.com/currencies/ethereum/historical-data/.

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

disclosures, this amount is far less than the 50% threshold for compliance with California's venture capital fund registration exemption.[9]

48.     The remainder of Patel's funds (more than 80%) have been deployed in speculative and risky cryptocurrency trades in violation of Defendants' representations and investment strategy that funds would primarily be deployed in equity investments.

49.     Defendants provided no notice or explanation for their departure from the Fund's investment strategy of venture capital investing.

50.     Defendants parked a large portion of the funds in highly liquid cryptocurrencies like Bitcoin and Ethereum, seemingly content to passively ride the waves of volatility those assets have experienced since 2021 (including a drop of over 60% in 2022).

51.     Other funds were invested in more obscure tokens and strategies, often resulting in spectacular failures.

52.     As a result, Defendants have grossly mismanaged Patel's funds, including halving the Fund's NAV during a two-year period.

**1)      Defendants squander hundreds of thousands of dollars trading cryptocurrency futures on FTX.**

53.     Defendants deposited a portion of Patel's funds in a margin account on the FTX exchange.    On information and belief, they used Patel's investment to conduct leveraged cryptocurrency futures trades, and suffered heavy losses due to grossly negligent trading decisions and/or margin calls.

54.     In a March 2022 investor update, Defendants claimed that they had engaged in "FTX margin trading" as a "hedge" against risk associated with other positions in the Fund's portfolio.

55.     But this statement was false.  The FTX position was not a "hedge" but in fact a high stakes gamble by Defendants.

56.     As of December 31, 2021, the Fund had invested over $500,000 in an FTX margin account.  As Patel later discovered, Defendants' trading on FTX triggered a margin call, leaving their FTX account with massive losses completely unrelated to FTX's later high-profile collapse.

---

[9] *See* PPM at 20, n.1.

**2)   Defendants lose money trading Curve tokens.**

57.     Defendants also invested Patel's funds in a risky cryptocurrency called the Curve (CRV) token.  Blockstart invested approximately $175,000 in CRV at the end of 2021, only to see that investment dwindle to $20,000 by mid-2022 followed by reports that the CRV token suffered a $47 million hack and concerns that $100 million in bank debt owed by CRV's founder, the owner of nearly half of all CRV tokens, could lead to a price collapse.

**3)   Defendants lose money trading the Ren token.**

58.     Defendants invested in the Ren token (REN), a cryptocurrency issued by a subsidiary of now-defunct Alameda Research (the cryptocurrency trading firm founded by Samuel Bankman-Fried).  Defendants suffered an 80% loss trading REN cryptocurrency.

**4)   Defendants lose money trading on Bittrex.**

59.     Defendants placed trades on the Bittrex exchange (later charged by the SEC for running an unregistered exchange) and, on information and belief, lost 70% of their investment.

**5)   Defendants lock up funds through illiquid staking and providing liquidity on unregistered decentralized exchanges.**

60.     Defendants also used the Fund's assets for so-called cryptocurrency "staking." "Staking" involves locking cryptocurrency in digital escrow to validate transactions on the blockchain in exchange for new cryptocurrency.  Staking may come with substantial risk, including by rendering the staked cryptocurrency inaccessible for months or even years.

61.     Defendants engaged in a similar trading strategy by acting as a "liquidity provider," which involves depositing cryptocurrency in a unregistered decentralized exchange to earn "yield," *i.e.*, fees and rewards for not withdrawing the deposited cryptocurrency.   The deposited cryptocurrency, in turn, may be used for trading by third parties (and thus subject to risk of loss).

62.     Thus, by acting as a liquidity provider and staking large amounts of Patel's investment, Defendants recklessly risked the investment and rendered portions of their cryptocurrency trades illiquid and inaccessible while still subject to volatility and price fluctuation.

**G.    Defendants conceal their misconduct by failing to timely provide Patel the required performance reporting and annual audited financials as required in the LPA.**

63.    Defendants sought to conceal their misconduct by failing to perform contractually and legally mandated audits and financial reporting.

64.    Section 8.1 of the LPA provides that ███████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████

65.    Section 8.1 of the LPA also required Defendants to provide quarterly account statements of the Fund's NAV.

66.    Defendants, however, refused to conduct audits or timely provide Patel with information about the Fund's performance or holdings.

67.    In response to repeated demands by Patel that Defendants perform audits, Defendants refused on the illegitimate basis that "the costs of such an audit to LPs may outweigh the benefits."

68.    Growing increasingly concerned by Defendants' lack of transparency, Patel demanded that Defendants perform a financial audit and provide a list of all completed and planned investments.

69.    Defendants did not comply with Patel's request.

70.    To the contrary, Bindlish and Mavris attempted to trick Patel into waiving the audit requirement.  On February 26, 2022, Mavris sent a consent form for an unrelated matter to Patel in which Defendants surreptitiously inserted a signature page for an audit waiver.  This sleight-of-hand was a gross violation of Bindlish and Mavris's fiduciary duties.

71.    Patel refused to sign the document or waive the audit requirement.

72.    Patel even offered to review the financials using his own resources, but Defendants did not provide him with sufficient information.

73.    To date, Defendants have never performed an audit.

74.    Defendants also have routinely failed to timely provide NAV statements, doing so only after repeated requests by Patel and often months overdue.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

**H.    Patel seeks to withdraw his investment as a result of Defendants' wrongful conduct and management, but Defendants refuse to return the investment.**

75.    Frustrated by Defendants' lack of transparency and failure to follow their stated investment strategy, Patel requested on August 5, 2022, that Blockstart allow him to withdraw his investment.  Patel also informed Defendants that he had become aware of the exchange rate error in the valuation of his initial investment, and requested that it be corrected immediately.

76.    Although Bindlish initially stated on a telephone call with Patel that "there's no lack of willingness on our part to return your funds," Bindlish and Mavris deflected Patel's requests for several weeks before rejecting his request on the basis of a minimum 60-month lockup period in the LPA.

77.    Bindlish and Mavris's rejection was improper.  Section 10.1(a) of the LPA allows a limited partner to withdraw "at any time and in any amount" upon consent of the General Partner. Bindlish and Mavris's refusal to provide consent was in bad faith and without justification.  There is no good faith rationale to enforce a five-year lockup period for a fund that trades in highly liquid cryptocurrencies, *i.e.*, the return of investor funds would not require the fund to exit illiquid investments at a deflated price.

78.    Defendants also refused to correct the incorrect valuation of Patel's investment.

79.    Over the next year, Patel repeatedly implored Defendants to allow him to withdraw his investment.

80.    For example, on August 23, 2023, Patel told Bindlish that "we do not agree with our Fund's money being invested in Crypto, whether it's BTC or ETH. Please convert it to USD. . . . If you can't comply, please return our share of the liquid funds."

81.    But Bindlish and Mavris repeatedly stalled Patel's requests in an effort to buy time and dissuade Patel from enforcing his rights.

82.    Worse, Defendants retaliated against Patel by revoking his ability to view Blockstart's cryptocurrency exchange accounts, which they had belatedly provided after months of Patel's demands.  As a result, Patel has no visibility into the amount and location of the Fund's assets.

I.        **Blockstart has been operating illegally as an unregistered investment advisor.**

83.      In addition to violating the promises made to the Fund's investors in the LPA and PPM, Blockstart's misconduct appears to run afoul of federal and California law.

84.      Under Rule 206(4)-8 promulgated under the Advisers Act, which applies to all investment advisers including those not registered with the Securities and Exchange Commission, it is illegal to make misleading statements of material fact and/or otherwise engage in a fraudulent, deceptive, or manipulative act, practice or course of business with respect to an investor in any pooled investment vehicle.

85.      Defendants' misleading and deceptive disclosures to Patel, as well as the failure to audit the Fund as required by the LPA, constitute violations of Rule 206(4)-8 and the fiduciary duties applied under the Advisers Act.

86.      Based on public filings, Blockstart has asserted its exemption from registration with the State of California under the Corporations Code and the California Code of Regulations ("CCR") thereunder.

87.      However, it is clear that the Fund is unable to meet the definition of "venture capital company" pursuant to Section 260.204.9 of the CCR and instead is a "retail buyer fund." Advisers to retail buyer funds are required by law to obtain, on an annual basis, audits of the Fund's financial statements and deliver such audits to each investor within 120 days of the fiscal year end.  Investors cannot waive this requirement.

88.      Blockstart is therefore operating illegally as an unregistered investment adviser in the state of California.

*        *        *

89.      Accordingly, Patel brings this action seeking redress for Defendants' fraudulent conduct and breach of their fiduciary and contractual obligations, including for damages in an amount to be proven at trial, or, in the alternative, rescission of the LPA, and such other relief as is set forth more fully below.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

## IV.    CAUSES OF ACTION

### COUNT I – BREACH OF CONTRACT
#### (Against Blockstart)

90.     Patel repeats and realleges the allegations set forth above as if fully set forth herein.

91.     The LPA is a valid, binding, and enforceable contract between Patel and Blockstart.

92.     Patel has complied with all material terms of the LPA.

93.     Blockstart has willfully failed to honor its obligations under the LPA.

94.     Section 2.4 of the LPA provides the investment strategies that Blockstart agreed to follow for the Fund.  Specifically, it provides:



95.     Blockstart willfully failed to follow the investment strategy set forth in Section 2.4. Rather than investing in early-stage companies, Blockstart engaged almost exclusively in cryptocurrency trading and speculation.  Blockstart's failure to adhere to the investment strategy materially breaches Section 2.4.

96.      Section 8.1 of the LPA requires Blockstart to conduct annual audits and provide other information to Limited Partners, including Patel.  Specifically, it provides:



97.     Section 8.1 further provides that Limited Partners, including Patel, are entitled to inspect the Fund's books and records: "███████████████████████████████████████████████████████████████████████."

98.     Blockstart has refused to perform annual audits, notwithstanding Patel's numerous demands.  Indeed, Blockstart has not conducted a single audit since Patel made his investment in February 2021.

99.     Blockstart also has refused to provide Patel with timely access to the Fund's books and records, including even basic information such as the Fund's P&L and breakdown of the Fund's cryptocurrency investments.  The limited information provided lacked detailed information about the Fund's holdings.

100.     Blockstart's failure to perform audits and provide information constitutes a breach of Section 8.1.

101.     Section 10.1(a) of the LPA provides that any Limited Partner, including Patel, may "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" with the consent of Blockstart.

102.     In light of Blockstart's repeated and material violations of law and the LPA, Patel formally requested the withdrawal of his full investment as contemplated under Section 10.1(a). Blockstart refused.

103.     Under Delaware law, which governs the LPA, all contracts contain the implied covenant of good faith and fair dealing, and that covenant cannot be waived.

104.     Thus, Blockstart is required to exercise discretion under the LPA in good faith, and not arbitrarily or unreasonably.

105.     Blockstart's denial of Patel's withdrawal request was made in bad faith and for an improper purpose: to forcibly restrain Patel's investment while Blockstart continues to accrue fees and engage in unlawful trades.

106.     Blockstart's misconduct – including by not following the investment strategy or conducting audits – denied Patel the benefit of his bargain.

107.     Accordingly, Blockstart's refusal to permit Patel's withdrawal constitutes a breach of the LPA, including the implied covenant of good faith and fair dealing contained therein.

108.     Blockstart's breach of the LPA has caused damages to Patel in an amount to be proven at trial.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

## COUNT II – BREACH OF FIDUCIARY DUTY
### (Against Bindlish and Mavris)

109.     Patel repeats and realleges the allegations set forth above as if fully set forth herein.

110.     As Managers of the General Partner of the Fund (*i.e.*, Blockstart), Bindlish and Mavris owe uncompromising fiduciary duties of loyalty and due care to all Limited Partners, including Patel.

111.     The LPA does not waive or reduce Bindlish's or Mavris's fiduciary duties.

112.     Bindlish and Mavris violated their fiduciary duties including without limitation:

a.      Misappropriating approximately $160,000 of Patel's investment through the use of an incorrect exchange rate, and then lying to Patel about their misconduct;

b.      Failing to pursue the Fund's stated investment strategies, including by not adhering to the venture capital strategy and instead using Patel's funds to speculate on cryptocurrency and futures trading;

c.      Grossly mismanaging the Fund's assets in risky and speculative cryptocurrency trades;

d.      Failing to perform audits as required by the LPA and California law;

e.      Engaging in deceitful conduct by attempting to dupe Patel into signing a waiver of the audit requirement;

f.      Refusing to act transparently and provide Patel with even basic information regarding his investment and the Fund; and

g.      Refusing to honor Patel's request for withdrawal from the Fund in bad faith.

113.     As a proximate and factual result of Bindlish and Mavris's breaches of their fiduciary duties, Patel suffered damages in an amount to be proven at trial.

## COUNT III – FRAUDULENT INDUCEMENT
### (Against all Defendants)

114.     Patel repeats and realleges the allegations set forth above as if fully set forth herein.

115.     Defendants knowingly made material misrepresentations to Patel regarding the Fund's investment strategy, including in discussions, the LPA, the PPM and in marketing materials.

116. According to Defendants, the Fund's investment strategy was to make venture capital investments. Defendants expressly disclaimed a strategy based on trading and speculation in cryptocurrency.

117. Defendant's misrepresentations were made with the intention to induce Patel to make an investment with Blockstart.

118. Patel would not have made his investment had there been accurate disclosure of Blockstart's true investment strategy to engage almost exclusively in risky cryptocurrency trading.

119. Patel's reliance on Defendants' misrepresentations was reasonable and justified.

120. Patel was harmed by Defendants' conduct, in an amount to be proven at trial. In the alternative, Patel is entitled to rescission of the LPA and the return of his investment.

## COUNT IV – NEGLIGENT MISREPRESENTATION
### (Against all Defendants)

121. Patel repeats and realleges the allegations set forth above as if fully set forth herein.

122. Defendants made materially false representations to Patel as described above.

123. The misrepresentations described above were false or misleading when made by Defendants, and were made without a reasonable basis for Defendants to believe them to be true.

124. Defendants made these representations with the intent to induce Patel's reliance thereon, and Patel did, in fact, reasonably rely on Defendants' representations in his decision to invest with Blockstart.

125. Defendants had a duty to disclose the true information because the information was material to the investments alleged herein.

126. Defendants' failure to disclose these material facts to Patel constitutes negligent misrepresentation.

127. Had Patel known of the true facts as described above, he would not have invested in the Fund.

128. As a proximate result of the fraudulent conduct of Defendants as herein alleged, Patel has incurred damages in that Plaintiff in an amount to be proven at trial.

## COUNT V – UNJUST ENRICHMENT
### (Against all Defendants)

129.     Patel repeats and realleges the allegations set forth above as if fully set forth herein.

130.     By using an arbitrary and unfavorable exchange rate, Defendants devalued Patel's investment and misappropriated approximately $160,000.

131.     Defendants' incorrect exchange rate was used without justification.

132.     Defendants' retainer of the amount rightfully owed to Patel is unjust and inequitable.

133.     Defendants also improperly refused Patel's request for a full withdrawal and were unjustly enriched through continued management fees on his investment.

134.     Defendants' refusal was made without justification.

135.     As a proximate result of Defendants' unjust enrichment, Patel has been harmed in an amount to be proven at trial.

## COUNT VI – SECURITIES FRAUD (CAL. CORP. CODE §§ 25501 & 25401)
### (Against all Defendants)

136.     Patel repeats and realleges the allegations set forth above as if fully set forth herein.

137.     Section 25401 makes it unlawful, in connection with the purchase or sale of any security, for any person, directly or indirectly, to offer or sell a security in California "by means of any written or oral communications which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made . . . not misleading."

138.     Patel's limited partnership interests in the Fund are securities.

139.     Defendants made untrue statements of material fact and/or omitted material facts necessary to make the statements made not misleading in connection with soliciting Patel's investment in the Fund, including without limitation the statements identified above.

140.     Defendants knew these statements were false or were reckless as to their truth or falsity.

141.     Patel did not know that the statements made by Defendants were untrue or misleading. Had he known the truth of any of these statements, or had Defendants disclosed the omitted information, he would never have invested in Blockstart.

142.     The omissions and misstatements constitute a violation of Cal. Corp. Code § 25401.

143.    As a direct and proximate result of Defendants' violation of Cal. Corp. Code § 25401, Plaintiff has suffered an economic loss in an amount to be proven at trial.

144.    Under Cal. Corp. Code § 25501, Patel is entitled to recission and/or damages in an amount to be proven at trial.

### COUNT VII – CONTROL-PERSON LIABILITY
### (Against Bindlish and Mavris)

145.    Patel repeats and realleges the allegations set forth above as if fully set forth herein.

146.    Corporations Code § 25504 provides in relevant part as follows:

Every person who directly or indirectly controls a person liable under Section 25501 or 25503, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, . . . are also liable jointly and severally with and to the same extent as such person . . . ..

147.    Bindlish and Mavris are managers of Blockstart and exercise complete control over its day-to-day operations.

148.    Bindlish and Mavris materially aided and caused Blockstart to violate Section 25501 as detailed above.

149.    Accordingly, Bindlish and Mavris are jointly and severally liable for Blockstart's violation of Section 25501.

### COUNT VIII – RESCISSION OF THE LPA UNDER
### 15 U.S.C. § 80b-15(b) AND CAL. CIV. C. § 1689(b)(7)
### (Blockstart)

150.    Patel repeats and realleges the allegations set forth above as if fully set forth herein.

151.    Section 215(b) of the Investment Advisers Act creates an implied private right of action for rescission of agreements that are void under its terms.

152.    Under Section 215(b) of the Investment Advisers Act of 1940, 15 U.S.C. § 80b-15(b), "[e]very contract made in violation of any provision of this subchapter and every contract heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of any provision of this subchapter, or any rule, regulation, or order thereunder, shall be void (1) as regards the rights of any person who, in violation of any such

provision, rule, regulation, or order, shall have made or engaged in the performance of any such contract."

153.    Rule 206(4)-8 promulgated under the Advisers Act makes it illegal to make misleading statements of material fact and/or otherwise engage in a fraudulent, deceptive, or manipulative act, practice or course of business with respect to an investor in any pooled investment vehicle.

154.    Defendants' misconduct, including their misleading and deceptive disclosures to Patel, misappropriation of funds and failure to audit the Fund, constitute violations of Rule 206(4)-8 and the fiduciary duties applied under the Advisers Act.

155.    Accordingly, the LPA is void under Section 215(b) of the Investment Advisers Act and Patel is entitled to rescission.

156.    Patel also is entitled to rescind the LPA under California Civil Code Section 1689(b), which permits rescission based on fraud and under the circumstances provided for in "any other statute providing for rescission."

157.    As explained above, the LPA is void under Section 215(b) of the Advisers Act.

158.    Accordingly, Patel also is entitled to rescission under California Civil Code Section 1689(b).

### COUNT IX – UNLICENSED SERVICES RESULTING IN DAMAGE
### UNDER CAL. C. CIV. P. § 1029.8(A)
### (Against Blockstart)

159.    Patel repeats and realleges the allegations set forth above as if fully set forth herein.

160.    California Corporations Code § 25230 makes it unlawful for an unlicensed investment adviser to operate in California.

161.    10 CCR § 260.204.9 provides an exemption from licensure for certain "venture capital companies."

162.    Defendants relied on the venture capital company exemption to avoid seeking licensure in California.  However, based on the investments made by the Fund, the Fund does not satisfy the definition of "venture capital company" because an insufficient portion of the Fund's investments constituted "venture capital investments." Well under 50% of the Fund's total NAV has

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

been deployed into investments that can be characterized as "venture capital investments."

163.    Thus, Blockstart is and has been operating unlawfully as an unregistered investment adviser in the state of California.

164.    California Code of Civil Procedure § 1029.8 provides a private right of action for damages resulting from the services of an unlicensed investment adviser.

165.    Accordingly, Blockstart is liable to Patel for damages incurred as a result of its misconduct.

## V.    PRAYER FOR RELIEF

WHEREFORE, Patel respectfully requests that the Court enter judgment in his favor and against Defendants as follows:

a.    Awarding compensatory damages for Defendants' fraudulent conduct and breach of their contractual and fiduciary duties in an amount to be proven at trial, or, in the alternative, ordering rescission of the LPA and the return of Patel's entire investment,

b.    Awarding pre- and post-judgment interest,

c.    Awarding Patel's reasonable costs and expenses, including reasonable attorneys' fees, and

d.    Granting such other and further relief as the Court deems just and proper.

Dated:  February 26, 2024              **MCDERMOTT WILL & EMERY LLP**

By:    _/s/ Preny Sarkissian_____
NATHAN BULL
DANIEL-CHARLES WOLF
PRENY SARKISSIAN

_Attorneys for Plaintiff Pritesh Patel_

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles